## Feil's Adoption.

*Adoption—Jurisdiction, O. C.—Act of April 4, 1925.*

1. Whether the Act of April 4, 1925, P. L. 127, entitled "An Act Relating to Adoption," is not in conflict with section 3, article iii, of the Constitution, in that the transfer of jurisdiction from the Common Pleas to the Orphans' Court is not expressed in its title, is doubted; but, as the question was not raised by any party in interest, it was not discussed or decided.

2. Adoption is not germane to the jurisdiction of the Orphans' Court; that court is not a court of orphans or a children's court, or a court of domestic relations, but deals with the estates of decedents and the fiduciaries entrusted with them, and the estates of minors and their guardians.

3. From colonial days it has been the policy of the Commonwealth to limit the functions of this court in the settlement of estates and the control and appointment of fiduciaries; such specialization is necessary to the proper discharge of its functions, as the work of the court is continually increasing with the increase in wealth and population.

4. Aside from the above reasons for not increasing the jurisdiction of the Orphans' Court, the proper exercise of jurisdiction in adoption cases would require a staff of experienced persons or experts to investigate and report upon the facts, which would not and could not be ascertained by a merely formal hearing before a judge, no matter how careful and conscientious. This equipment the Common Pleas and Municipal Courts possess and the Orphans' Court is without; hence, the humanitarian objects of the framers of the bill would be frustrated by depriving the Municipal Court of this jurisdiction under the Act of May 11, 1923, P. L. 201.

5. *It seems* that the Act of May 11, 1923, P. L. 201, conferring jurisdiction on the Municipal Court in adoption, is not repealed by the Act of April 4, 1925, P. L. 127, conferring such jurisdiction upon the Orphans' Court.

Petition of John and Terezia Lenhart for decree of adoption under the Act of April 4, 1925, P. L. 127. O. C. Phila. Co.

*S. Lloyd Moore* and *Allen M. Stearne*, for petitioners.

GEST, J., Sept. 29, 1925 [Having found the facts of the case, which have no interest and are, therefore, omitted, stated].—I am of opinion that the petition should be granted and will enter a decree accordingly.

As this is the first petition for adoption that has come before me for hearing under the new act of assembly which vests jurisdiction in the Orphans' Court, I think it proper to refer to the provisions of the act in some detail.

The Act of April 4, 1925, P. L. 127, entitled "An Act relating to Adoption," was drafted and presented to the legislature by the commission appointed to study and revise the statutes of Pennsylvania relating to children. The duty of the commissioners, under the Act of July 11, 1923, P. L. 994, was to study

all laws relating to child welfare and to suggest revisions and amendments to the statutes of Pennsylvania which relate to children, especially to those which relate to the dependent, defective, delinquent, neglected, incorrigible or illegitimate children, to study the laws, conditions and practice of this State relating to child welfare, to revise and consolidate such laws, and to recommend such amendments to existing statutes of the State of Pennsylvania which relate to children, especially to those which relate to the dependent, defective, delinquent, neglected, incorrigible or illegitimate children, or to their treatment, care, maintenance, custody, control or protection and reformation, and such additional laws as may be needed to embody the best thought and experience on these subjects.

The report of the commission, presented to the legislature of 1925, stated that it was found to be impossible to complete the task assigned to it within the period of time allotted (Feb. 1, 1925), but they presented to the legislature this act "Relating to Adoption" and another providing for the licensing of boarding-houses for infants, also passed and approved, being Act No. 155.

Nothing whatever appears in the title of the act to show, or lead any one to suspect, that the jurisdiction in adoption cases is taken from the Court of Common Pleas or Municipal Court and vested in the Orphans' Court, nor is such transfer of jurisdiction discussed or mentioned in the report of the commission. The statute specifically repeals all the acts relating to adoption heretofore in force except, however, the Act of May 11, 1923, P. L. 201, which gives jurisdiction in adoption proceedings to the Municipal Court. An examination of the acts specifically repealed shows that the jurisdiction has always been vested by them in the Court of Common Pleas, except in the case of the anomalous Act of April 2, 1872, P. L. 31, which provided for adoption by deed recorded in the office of the Recorder of Deeds.

It may be gravely doubted whether the act is constitutional under section 3 of article III, inasmuch as this important subject, that is, the transfer of jurisdiction, is not clearly expressed in its title. As, however, this question is not raised by any party, it will not be discussed or decided at the present time. If, however, the act be constitutional, it will be necessary in the future for any one interested in the maintenance of our judicial system, and concerned with the orderly administration of justice, to scrutinize with care every bill introduced in the legislature lest, perchance, similar sweeping changes in the jurisdiction and powers of the several courts of the Commonwealth may be made without notice. As the number of bills introduced in the last session of the legislature was probably above 2000, the enormity of the task will be apparent. With equal ease, an act "Relating to Insane Persons" or an act "Relating to Divorce" might transfer the jurisdiction in such cases to the Orphans' Court, or an act "Relating to Decedents' Estates" shift the jurisdiction from this court to the Court of Common Pleas, or, for the matter of that, to the Superior Court, whose jurisdiction is not necessarily appellate.

It cannot be said that adoption is germane to the jurisdiction of the Orphans' Court. Notwithstanding its name, the Orphans' Court is not a court of orphans or a children's court or a court of domestic relations, as some may ignorantly suppose. It has nothing to do with children as such. It deals with the estates of decedents and the fiduciaries entrusted with them and the estates of minors and their guardians. It is an estate court, or better, a fiduciaries' court; its proper province is the contest of wills and their construction, the settlement of decedents' estates and the appointment, supervision and control of fiduciaries and the like subjects. When this court appoints guardians for minor children it establishes a fiduciary relation, but

the care of minors and the supervision of their welfare are foreign to our duties. By adoption, however, no fiduciary relation is established; there is a change of status, the person adopted is taken out of the family of its natural parents and transplanted into the family of the adopting parents, and it should be remembered that by the statute adults may be adopted as well as minors, in which case the impropriety of the jurisdiction is even more manifest. The whole matter of adoption, indeed, is unknown to the common law; it is imported from the Roman jurisprudence, where adoption and adrogation formed an important head of the law for reasons not now or here applicable.

The history of the Orphans' Court in this State may be read at large in Professor Lloyd's "History of the Early Courts of Pennsylvania," and was referred to by Chancellor Jenkins in his address to the court on the occasion of the fiftieth anniversary of its institution as a separate court, Jan. 2, 1925. An examination of the various statutes will show a clear recognition of these jurisdictional principles. Even in the case of the appointment of a trustee *durante absentia*, under the Act of April 11, 1879, P. L. 21, supplied by section 60 of the Fiduciaries Act of June 7, 1917, P. L. 447, the absence for over one year would in most cases ripen into a presumption of death, and yet the legislature in the same session, by the Act of July 17, 1917, P. L. 1033, gave jurisdiction to the Court of Common Pleas.

It should be remarked that it has been the policy of this Commonwealth from colonial days to limit the functions of this court to the settlement of estates and the control and appointment of fiduciaries. The specialization thereby afforded to the court has enabled it the better and more expeditiously to distribute estates among creditors, heirs and legatees. Every one in the State eventually becomes either a decedent, heir, legatee or creditor, and, hence, it is of the utmost importance to the whole community that the work of this court should be handled with accuracy and expedition, rather than that there should be added to its functions the granting of petitions for adoption; a jurisdiction very foreign to the specialization mapped out by the public policy of this Commonwealth.

Furthermore, the importance of maintaining this specialization will be the better appreciated when it is remembered that all the vast assets in this State potentially pass through this court every generation.

Nor can it be said that this court is better able to administer adoption cases than the Common Pleas, which has had the jurisdiction ever since adoption has been recognized by law (until the Act of 1923 gave it to the Municipal Court), without, so far as we are aware, these courts showing themselves to be unequal to the task. We see no reason whatever to suppose that the work can be done better by the Orphans' Court than by the Common Pleas or Municipal Court, and, on the contrary, it is clear that we have not the requisite facilities and machinery for doing it as well. It is important in many, if not in all, cases of proposed adoption that the facts and circumstances should be carefully investigated and the *bona fides* of the application be minutely examined. This would frequently require the employment of capable persons to investigate and report upon the facts, which would not, and could not, be ascertained by a merely formal hearing before a judge, no matter how careful and conscientious he may be. The Common Pleas Courts and the Municipal Court, in their juvenile division, have many trained and experienced persons in their staff who can do this work better than we can do it, and we feel that the humanitarian objects of the framers of the bill would be frustrated by depriving the latter court of its jurisdiction, conferred by the Act of May 11, 1923, P. L. 201, above referred to.

Feil's Adoption.

It would certainly be rash to assume that the learned draftsman of the Act of 1925 was ignorant of the Act of 1923, passed just two months previously to the act creating the commission. As, therefore, the commissioners who reported the Adoption Act of 1925 were fully cognizant of the Act of 1923, conferring jurisdiction on the Municipal Court in adoption proceedings and carefully refrained from repealing it, it is evident that it was not intended to be repealed, for the general repealer in the Act of April 4, 1925, only extends to acts that are in conflict or inconsistent therewith. There may be no necessary conflict or inconsistency, as the effect of the two acts might be to make the jurisdiction concurrent instead of exclusive in either. It may be, therefore, that the Municipal Court still retains its jurisdiction, although on this question this court can express no opinion.

If the draftsmen of the act supposed that this court is so insufficiently provided with work that this additional business might fittingly be imposed upon it, they must have been very ill-advised. During the year 1924 we disposed of 4154 petitions on the weekly motion list; 83 cases on the argument list, which required careful examination and the preparation of many formal opinions; 18 appeals were heard from the Register of Wills, and 2634 adjudications were filed upon accounts aggregating in value $181,707,203. And year by year the business will naturally increase.

If further duties are imposed upon a court already taxed to the utmost, the consequences to the judges of the court and to the community may become very serious. It was on the ground just stated that Judge Penrose in his communication to the Pennsylvania Bar Association, at its meeting in 1904, so vigorously opposed the bill that proposed to confer exclusive jurisdiction on the Orphans' Court in cases of lunatics, weak-minded persons and habitual drunkards. In consequence of his opposition, the bill was recommitted for further consideration, and at the next session in 1905 the committee did not press the matter further. Judge Penrose pertinently remarked: "It is a sad but common experience that legislative enactments making radical changes in the principles or long-continued practice of the law are productive of confusion and mischief, greatly exceeding any possible benefit, and this, no matter how learned, accomplished or painstaking may have been the draftsman of the act."